UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>JAIME RENE LOPEZ-VAAL,<br><br>  Defendant. | Case No.: 3:16-cr-00995-GPC<br>      3:17-cv-00926-GPC<br><br>**ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255**<br><br>**[ECF No. 38]** |

Defendant Jaime Rene Lopez-Vaal has filed a motion to "vacate, set aside, or correct sentence" under 28 U.S.C. § 2255. The motion is fully briefed. For the reasons set forth below, the Court DENIES the motion.

**I.   Background**

On May 5, 2016, Defendant waived his right to an indictment and was charged by information with one count of being a removed alien found in the United States without consent from the Attorney General, in violation of 8 U.S.C. § 1326(a) and (b). (ECF Nos. 10–11.) On June 22, 2016, Defendant appeared before Magistrate Judge Adler to change his plea from not guilty to guilty. (ECF No. 17.) At that hearing, Defendant was questioned extensively about the plea agreement Defendant had entered into with the government, in which he agreed to plead guilty to a single count of violating 8 U.S.C. § 1326(a) and (b). (ECF No. 19.) In the agreement, Defendant admitted that he suffered

a felony conviction in Washington state court in 2001 for manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance; that he was lawfully excluded, deported, and removed from the United States in 2007; and that he was found in the United States in 2016 after knowingly and voluntarily reentering and remaining in the United States without the Attorney General's consent or equivalent thereof. (*Id.* at 2–3.) In the plea agreement, Defendant agreed that he "has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel, and has a clear understanding of the charges and consequences" of his plea, and was pleading guilty "because in truth and in fact defendant is guilty and for no other reason." (*Id.* at 5.) Defendant also agreed that he understood that the sentencing judge would consult the sentencing guidelines but that the ultimate decision on sentencing was up to the sentencing judge, and that any estimation by defense counsel as to the probable sentence was not binding on the judge. (*Id.* at 6–7.) While Defendant and the government did not agree to a criminal history category, they agreed to a base offense level of 8, an enhancement of 16 levels as a result of Defendant's prior convictions, a two or three level deduction for acceptance of responsibility, and a four level departure under the fast-track program. (*Id.* at 7–8.)

In the plea agreement, Defendant also agreed to waive "to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel." (*Id.* at 10–11.) Defendant also waived "to the full extent of the law, any right to appeal or to collaterally attack the sentence, unless the Court imposes a custodial sentence above the high end of the guideline range . . . recommended by the Government pursuant to this agreement at the time of sentencing," and agreed that if he "believes the Government's recommendation is not in accord with this plea agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived and cannot be raised on appeal." (*Id.* at 11.) In the last pages of the plea agreement, Defendant agreed that by "signing this agreement, defendant certifies that defendant has

2

3:16-cr-00995-GPC
3:17-cv-00926-GPC

read it (or that it has been read to defendant in defendant's native language)," that he "has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect," and that defendant "is satisfied with counsel's representation," all of which was "defendant's independent opinion, and his/her counsel did not advise him/her about what to say in this regard." (*Id.* at 12–13.) Defendant initialed every page of the plea agreement and signed the final page.

At the change of plea hearing, a certified Spanish interpreter translated the entirety of the proceedings into Spanish for Defendant and three other defendants who were also changing their pleas in unrelated cases. (ECF 40 at 1.) Before the hearing began, Defendant was placed under oath. (*Id.* at 2.) Defendant then indicated that he wished to withdraw his prior plea of not guilty and enter a plea of guilty to the charge in the information. (*Id.* at 3.) Defendant stated that he understood that he was under oath and that he could be charged with perjury if he made a false statement at the hearing. (*Id.* at 4.)

Defendant stated that he understood that he was admitting to the elements of the offense with which he was charged, which were: (1) that he was an alien, (2) he had been deported, and (3) he returned or was found in the United States without applying for and receiving proper permission. (*Id.*) Defendant also indicated that he understood the maximum penalties for that charge. (*Id.* at 7.) Defendant stated that he was not a citizen of the United States, and that he understood, after consulting with his counsel, that there was a "virtual certainty" that he would be removed from the United States following his custodial sentence. (*Id.* at 8.) Defendant indicated that he understood the sentencing judge was not bound by the sentencing guidelines and that once he is sentenced, he could not withdraw his plea. (*Id*. at 9.) Defendant indicated that before he signed his plea agreement, it was translated into Spanish so that Defendant could fully understand it, that he went over all the terms of the plea agreement with his counsel and asked him any questions he had, and that he had no questions about the plea agreement at the time of the

hearing. (*Id.* at 10.) Defendant stated that he was satisfied with the advice he received from his attorney. (*Id.* at 11.)

Judge Adler questioned Defendant about the waiver of appeal and collateral attack section in the plea agreement. Defendant indicated that he recalled going over that section of the plea agreement with his counsel, and that at the time he initialed and signed the plea agreement he understood the rights he was waiving. (*Id.*) Defendant's counsel also indicated that he had discussed the plea agreement with Defendant. (*Id.* at 11–12.)

Defendant then affirmed certain facts as true, including that he is not a citizen of the United States, that on June 12, 2001, he suffered a felony conviction for manufacturing, delivering, or possessing with intent to manufacture or deliver a controlled substance in violation of the Revised Code of Washington § 69.50.401, that he was lawfully excluded, deported, and removed from the United States to Mexico on April 16, 2007, and that on April 7, 2016, he was found in the United States without receiving permission from the Attorney General or designated successor. (*Id.* at 12–13.) Defendant's counsel then affirmed that he believed Defendant's guilty plea was made voluntarily and with his concurrence. (*Id.* at 13.) Judge Adler then made a few corrections to typographical errors in the plea agreement, which Defendant initialed. (*Id.*) After Defendant formally pled guilty, Judge Adler found that Defendant's plea was "freely and voluntarily given, with an understanding, knowing, and intelligent waiver of [his] rights; that [he] is competent to enter his plea; and that there's factual basis for [the] plea." (*Id.* at 14.) This Court entered an order accepting Defendant's guilty plea on July 13, 2016. (ECF No. 21.)

Prior to the sentencing hearing, the Probation Office prepared a presentencing report ("PSR") calculating a total offense level of 19 and a criminal history category of

V, resulting in a guideline range of 57 to 71 months.[1]  (ECF No. 29 at 13.)  The PSR noted, however, that the government was recommending a four-level "fast track" departure under United States Sentencing Guideline (USSG) § 5K3.1.  (*Id.* at 14.)  Applying the four-level departure, the PSR calculated a guidelines range of 37 to 46 months, and recommended a sentence of 40 months imprisonment.  (*Id.* at 16–17.)  The government agreed with the PSR's calculation of the proper guidelines range, but recommended a sentence of 37 months imprisonment.  (ECF No. 30.)

The offense level calculation consisted of the following.  The base offense level under USSG § 2L1.2 is eight.  Four levels were added under § 2L1.2(b)(1) because Defendant had been convicted of a felony that was an illegal reentry offense.[2]  Ten levels were added under § 2L1.2(b)(3) because after Defendant was ordered removed from the United States for the first time, Defendant engaged in criminal conduct resulting in a conviction for a felony offense for which the sentence imposed was five years or more.[3]  Three levels were deducted under USSG § 3E1.1(a) and (b) for acceptance of responsibility.  This left a total offense level of 19.  A four-level departure under the fast-track program resulted in an offense level of 15.

Defendant's criminal history category calculation consisted of the following.  Three points were added under USSG § 4A1.1(a) as a result of Defendant's two Washington state felony convictions in 2001 for unlawful delivery of a controlled substance.  Three points were added under USSG § 4A1.1(a) as a result of Defendant's federal misdemeanor and felony illegal entry convictions in 2007.  And three points were

---

[1] The Probation Office had submitted an earlier PSR based on the November 1, 2015 version of the United States Sentencing Guidelines (*see* ECF No. 22), but later filed an amended presentencing report using the November 1, 2016 version of the guidelines (ECF No. 29).
[2] Before the instant offense, Defendant had sustained a felony illegal reentry offense.  *See United States v. Lopez-Vaal*, No. 3:07-cr-0423-IEG-1, ECF No. 20 (S.D. Cal.) (criminal judgment convicting Defendant of misdemeanor and felony illegal entry in violation of 8 U.S.C. § 1325).
[3] Defendant was convicted in Minnesota state court of felony possession of a pistol or assault weapon. (ECF No. 29 at 9–10.)

added under USSG § 4A1.1(a) as a result of Defendant's Minnesota state felony conviction for possession of a pistol/assault weapon. Two points were added under USSG § 4A1.1(d) because Defendant committed the instant offense while under criminal justice sentences. These eleven criminal history points resulted in a category of V.

The Court held a sentencing hearing in this case on November 4, 2016, during which Defendant was present and received the assistance of a Court-certified Spanish language interpreter. (ECF No. 41 at 2.) Upon questioning by the Court, Defendant's counsel agreed with the PSR and government's offense level calculation. (*Id.* at 4.) Defendant's counsel argued, however, for an additional two-level departure under USSG § 5K2.0.[4] (*Id.* at 5.) Defendant's counsel pointed to Defendant's wish to become a better father and husband, which was the reason for his reentry. (*Id.* at 6.) Counsel noted that Defendant planned to return to his hometown and to make plans for his family to visit him. (*Id.* at 6–7.) In light of his construction and landscaping work, Defendant planned to financially support his family to the extent possible, and according to counsel, is intent on changing his life when he gets out of prison. (*Id.* at 7.) For those reasons, Defendant's counsel requested the additional two-level departure and a sentence of 30 months. (*Id.*) The government re-asserted its 37-month sentence recommendation. (*Id.* at 8.) The Probation Officer re-asserted the PSR's 40-month sentence recommendation. (*Id.*)

The Court found that there were not circumstances to support Defense counsel's requested additional two-level departure. (*Id.* at 9.) Considering the § 3553 factors, the Court concluded that a 40-month sentence was appropriate in light of Defendant's criminal history and the egregious facts underlying Defendant's gun-possession conviction. (*Id.* at 9–11.) The Court informed Defendant of his right to appeal and

---

[4] Defendant's counsel originally requested a six-level departure in an effort to match the 2016 version of the USSG, but because the amended PSR and the government's new sentencing recommendations used the 2016 version of the USSG, Defendant's counsel altered his request to a two-level departure.

instructed Defendant that he "must file [his] notice of appeal within 14 days of today's date." (*Id.* at 12.) The Court also noted, however, that because the sentence imposed was within the guidelines range recommended by the government, the Court's "understanding is Mr. Lopez has waived his right to appeal to the extent possible," with which Defendant's counsel agreed. (*Id.*) The Court then asked Defendant, "[i]s that also your understanding, Mr. Lopez, that you have waived your right to appeal to the extent possible?" Defendant responded: "Yes," but then said, "I didn't understand that." (*Id.* at 12–13.) The Court followed up and asked Defendant: "Do you also agree, sir, that, based on the sentence that was imposed, that you have waived your right to appeal this sentence to the extent provided under the law?" Defendant responded: "That's fine." (*Id.* at 13.) A criminal judgment reflecting the Court's sentence was issued on November 9, 2016. (ECF No. 32.)

On February 6, 2017, Defendant, appearing *pro se*, filed a notice of appeal. (ECF No. 33.) In that notice, Defendant indicated that he was filing the notice of appeal because he "has not heard nothing from Defense Counsel," and requested that he be appointed counsel to consider the effect of "*Mathis*, *Descamp*, *Taylor*, [and] *Dimaya*." (*Id.* at 1.) Defendant noted that he stated to his counsel that "I had never seen an Immigration Judge for Enhancement to be Valid (14 Point Enhancement) and Defendant has Never received a Reinstatement of Deportation Order at all." (*Id.*) On March 16, 2017, the Ninth Circuit dismissed Defendant's appeal as untimely under Federal Rule of Appellate Procedure 4(b)(1)(A). (ECF No. 36.)

Defendant filed the instant motion to vacate, set aside, or correct his sentence on May 4, 2017. (ECF No. 38.)

**II.      Legal Standard**

28 U.S.C. § 2255 authorizes the Court to "vacate, set aside, or correct the sentence" of a federal prisoner on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized

7

by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

### III. Analysis

#### A. Effect of Collateral Attack Waiver in Defendant's Plea Agreement

The government contends that Defendant waived most of his arguments pursued in his 2255 motion via the appellate and collateral attack waiver section in his plea agreement. "The Ninth Circuit has upheld the enforceability of waivers in similar plea agreements, reasoning that the right to appeal or collaterally attack one's sentence [under § 2255] is derived by statute, and '[a] knowing and voluntary waiver of a statutory right is enforceable.'" *Entzminger v. United States*, No. 3:12-cr-3450-H, 2015 WL 13333346, at *5 (S.D. Cal. Feb. 18, 2015) (quoting *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)). "The scope of a § 2255 waiver, however, may be subject to potential limitations," such as "if the trial court did not satisfy certain requirements under Rule 11," "where the sentence imposed is not in accordance with the negotiated agreement, or if the sentence imposed violates the law." *Mariscal v. United States*, No. 3:14-cr-02460, 2017 WL 1346641, at *1 (S.D. Cal. Apr. 11, 2017). Moreover, "a waiver may not 'categorically foreclose' defendants from bringing § 2255 proceedings involving ineffective assistance of counsel or involuntariness of waiver." *Id.* Here, Defendant made a clear waiver of his right to collaterally attack his sentence. To the extent his arguments in the instant motion are based on assertions other than the exceptions just listed, Defendant's collateral attack is barred by the waiver in his plea agreement.

#### B. Whether Defendant's Waiver was Knowing and Voluntary

Defendant suggests that he did not knowingly and voluntarily waive his right to collaterally attack his sentence, but the Court is unpersuaded. Defendant asserts that his

8

3:16-cr-00995-GPC
3:17-cv-00926-GPC

counsel "did not explain to Defendant the Consequences of Pleading Guilty or any Provisions on the Plea Agreement and just told me to si[g]n that I would not be get[t]ing more than 24 Months." (ECF No. 45 at 1.) But the change of plea hearing transcript makes clear that was not the case. During the change of plea hearing, Judge Adler asked Defendant if, before signing the plea agreement, it was translated into Spanish so he could fully under that it, to which Defendant responded yes. (ECF No. 40 at 10.) Judge Adler also asked Defendant if he recalled going over the waiver provisions of the plea agreement with his counsel before he signed and initialed the agreement, to which Defendant responded yes. (*Id.* at 11.) Judge Adler also asked Defendant's counsel whether he believed that Defendant fully understood the waiver provisions of the plea agreement, and counsel responded that he did. (*Id.* at 11–12.) In light of Defendant's responses to these questions, coupled with his having initialed each page of the plea agreement and signing the final page, the Court concludes that Defendant knowingly and voluntarily waived his right to collaterally attack his sentence.

In his reply, Defendant suggests that during the change of plea hearing, the translator did not "consult" Defendant while performing the translation. The Court finds this assertion implausible. First, the hearing transcript indicates that each time a question was asked to the participating defendants, the interpreter considered whether each defendant responded the same way. (*E.g.*, *id.* ("THE COURT: As to Mr. Gomez and Mr. Lopez, before you signed and initialed your plea agreement, was it translated to you in Spanish so you could fully understand it? THE INTERPRETER: Yes, *as to the Spanish-speaking defendants*." (emphasis added).) Moreover, if the interpreter was responding to Judge Adler's questions without consulting Defendant, Judge Adler would have admonished the interpreter to wait for each defendant's response. Because no such admonishment or mention of this problem appears anywhere in the transcript, the Court finds it implausible that the interpreter was not accurately relaying Defendant's responses to Judge Adler's questioning.

//

## C. IAC Claim

As stated above, Defendant's waiver of his right to collaterally attack his sentence is not effective with respect to claims of ineffective assistance of counsel. An individual claiming ineffective assistance of counsel ("IAC") must show that (1) "deficient performance by his counsel" and (2) "that the performance prejudiced" the individual. *Entzminger*, 2015 WL 13333346, at *1.

> Counsel's performance is deficient only if it falls below an objective standard of reasonableness. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." When considering a claim of ineffective assistance of counsel, a reviewing court must be highly deferential to counsel's performance. The [defendant] must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." A [defendant] must show "that counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Reasonable tactical decisions that a petitioner later questions do not create ineffective assistance claims.
>
> To show prejudice, the Petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 687–89, 694 (1984)) (additional citation omitted). Here, Defendant's IAC claim can be categorized into three discrete complaints, consisting of his counsel's failure to (1) investigate the removal that served as the basis for Defendant's illegal reentry conviction, (2) investigate the propriety of the sentencing enhancement on the basis of Defendant's Minnesota conviction, and (3) file an appeal despite Defendant's explicit request to do so.

With respect to the first assertion, Defendant argues that he "has never seen an Immigration Judge for the facts in [the] Plea Agreement," and that he told his counsel about that fact. (ECF No. 38 at 12.) Defendant has failed, however, to suggest any reason he was entitled to appear before an immigration judge prior to his removal in 2007. To the contrary, it appears that Defendant had no such right. Under Section

235(b)(1) of the Immigration and Nationality Act, "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1). The government has submitted a copy of the INS documents relating to Defendant's 2007 removal from the United States. These forms indicate that Defendant entered the United States on April 15, 2007, near Calexico, California. (ECF No. 42, Ex. 6 at 2.) On April 15 and 16, Defendant initialed and signed expedited removal documents containing his admission that he was in the United States illegally and had no fear or concern about being returned to his home country or being removed from the United States, he would not be harmed if he was returned to his home country of Mexico, and that he did not have any questions. (*Id.* at 3–5.) In light of Defendant's concessions in these documents that he had just arrived into the country illegally and had no fear about being returned to his home country, Defendant had no right to appear before an immigration judge prior to his expedited removal. Defendant has thus failed to show that, even if his counsel had investigated the assertion that Defendant never appeared before an immigration judge prior to his 2007 removal, the outcome in this case would be any different.

Next, Defendant argues that his counsel was deficient for failing to object to the PSR's consideration of Defendant's Minnesota and Washington criminal convictions because the PSR did not offer judicially noticeable documents demonstrating that these convictions were proper bases for enhancements or criminal history points. However, Defendant fails to offer any authority, and the Court is aware of none, stating that in order for the Court to accept the PSR's recommendation, the PSR author must offer the Court judicially noticeable documents proving the validity of these underlying convictions. Counsel's failure to object to the absence of such noticeable documents therefore was not

11

3:16-cr-00995-GPC
3:17-cv-00926-GPC

deficient performance because there was no legal basis for such an objection.[5]

Relatedly, Defendant contends that his counsel should have objected to the use of his Minnesota felony as a predicate for an enhancement, and, in support of that argument, cites Supreme Court decisions applying the categorical and modified categorical approaches. The categorical and modified categorical approaches, however, have no relevance here. The guidelines section at issue here, § 2L1.2(b)(3)(A), instructs that a 10-point enhancement should be applied if, "at any time after the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct resulting in . . . a conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed was five years or more." In 2011, Defendant was sentenced to 60 months in prison by a Minnesota court for possessing a pistol/assault weapon. That conviction was a felony offense and the sentence imposed was 60 months, or five years. Defendant's Minnesota conviction clearly satisfies the requirements of § 2L1.2(b)(3)(A). It is unnecessary to engage in the categorical approach because there is no ambiguity in § 2L1.2(b)(3)(A)'s description of the predicate offense.

Finally, Defendant argues that his counsel was ineffective in light of his failure to file a timely notice of appeal despite Defendant's wish to do so. Assuming that failing to file an appeal against the wishes of the client is unreasonably deficient performance, the Court nonetheless finds that Defendant has failed to show any resulting prejudice. As demonstrated by the discussion above, Defendant's challenges to his conviction and sentence lack substantive merit. As a result, an appeal on the grounds discussed in Defendant's § 2255 motion would not have succeeded. Without demonstrating how any appeal would have altered his conviction or sentence, Defendant cannot make out an IAC

---

[5] Defendant repeatedly refers to an "amendment" to his offenses. (*See* ECF No. 38 at 14–15.) The Court is unsure to what Defendant is referring. If he is referring to the amended nature of the PSR, as stated above, this was the result of applying a new version of the USSG.

claim.

## IV. Conclusion

For the reasons stated above, Defendant has waived his right to collaterally attack his sentence under 18 U.S.C. § 2255. The evidence amply demonstrates that Defendant knowingly and voluntarily waived that right. Defendant has also failed to demonstrate a viable IAC claim. As a result, Defendant's motion to vacate, correct, or set aside his sentence is **DENIED**.

A Defendant may not appeal the denial of a § 2255 motion unless he first receives a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* §2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In light of Defendant's clear waiver of his right to collaterally attack his sentence, as well as the lack of any substantive merit underlying the arguments that have not been waived, the Court finds that reasonable jurists could not debate whether Defendant is entitled to any relief. The Court therefore **DENIES** Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

Dated: January 10, 2018

Hon. Gonzalo P. Curiel
United States District Judge